Good morning, your honors. Vince Bronco, Federal Defenders, on behalf of Mr. Varelas. A statute is divisible only when state law requires unanimity. Because the government has offered no cases showing that jurors must agree as to a specific controlled substance within each California drug statute. Counsel, I understand the argument you're making, and I don't understand why it's not foreclosed by Coronado. Because Coronado never considered the issue of jury unanimity. Well, there's a footnote in the subsequent case that is arguably in tension with Coronado that says they did. Well, what that footnote said. The footnote says the jury instructions were a part of it. I don't know what they are. Nobody's told me. I don't know whether California jurors are instructed, as long as you agree that it's a drug on the list, you don't have to be unanimous on which drug, or whether the jurors are told the charge is for this drug or the other one, and you have to be unanimous on that drug. There's nothing in the briefs or excerpts or anything that I could see that told me which way it went. And it sounds like that post-Coronado case says that Coronado relies on the jury instructions, in part. Well, it's not just that. Let me first address what the footnote in Rendon, I believe, what you're referring to. That's right. I couldn't remember. Reference to Coronado. And what Rendon says that Coronado did do is it just didn't look at the statutory language. It actually did look to jury instructions, and it looked to the two cases that were brought up. By the appellants in that case. But it didn't say that Coronado actually considered jury unanimity. Let me follow up on Judge Kleinfeld's inquiry a little bit further, because what I would like to know from you is whether the statute considered in Coronado is materially distinguishable from the statute that we're looking at here, because it seems to me that if it is virtually identical, then as a three-judge panel we can do nothing but follow Coronado. So how is the statute here, just looking at the statute, different from the one that was interpreted in Coronado? It does list different substances. I will agree that it is worded somewhat similarly. The structure of it is essentially the same. Yes, but then you have to look at what Rendon says. And Rendon says only when state law requires that in order to convict a defendant, the jury must unanimously agree that he committed a particular substance of offense contained within the disjunctively worded statute, and are we able to conclude that the statute contains alternative elements, not alternative means. If Coronado governs and it's arguably inconsistent with a later case, then it would seem to me that our only option as a court would be to have an en banc proceeding that reconciles the two. But if the statute here is essentially the same as the one in Coronado, as a three-judge panel we can't say that we're not going to follow it unless it is fatally undermined by Rendon, and Rendon has no right to do that as another three-judge panel. So what do we do in terms of our internal procedures? I think you do have two choices. One is to find a way to distinguish Coronado, which I will explain. Because Coronado is a drug statute, structurally similar to the drug statute, in this case materially indistinguishable actually, and Rendon is about the burglary statute and I think it was something about a weapon, and that's pretty different from a drug statute. As a three-judge panel, we have to follow all the law of the circuit, and I think that would force us to distinguish them and follow Coronado, because that's also a drug case. As a three-judge panel, you are required to follow Rendon too, and Rendon sets up the framework to determine. They're the first case that really examined how do we distinguish between elements and means. Counsel, we've said in numerous cases that even a case that contains no reasoning to its holding or imperfect reasoning, we're still bound to follow it unless and until we follow our procedures for overruling it. So the fact that a later case has a fuller explanation of methodology doesn't take away the fact that we have to follow Coronado if the statute is materially similar. Well, I disagree, because one way or another you're going to have to extend the law here. For all of the cases on calendar, none of those drug statutes have been specifically analyzed whether or not they're divisible or not. So you have Coronado that's out there. Do you believe that there is a difference between 11-351 and the statute in Coronado? No. I think you're going to have to either follow Coronado or follow Rendon, but there's a way to do that because, in this court, it said, under our precedent, a previous decision does not bind a subsequent panel with respect to matters that were not considered or addressed in the prior case. Coronado never addressed jury unanimity. Well, I know, but it addressed the holding that this ‑‑ it addressed the issue. It said this statute is divisible. That's the holding of the case. 11-357 is? Is divisible. That's the holding of the case. And if that ‑‑ that holding is binding on us. So if our statute looks almost identical to the statute that was considered there, we have to follow it no matter whether it contained a methodology or it didn't. Well, that's ‑‑ I don't believe that's correct because they ‑‑ if a case, if you're trying to extend a case and they never considered the key question for determining what's an element and what's a means. That's an argument. That's an argument or it's a part of the reasoning to a result. We're bound by the holding, not the reasoning. The holding pertains just to 11-377. And the holding of Rendon says you have to consider jury unanimity. Well, no, the holding of Rendon primarily is about, as Judge Kleinfeld said, a burglary statute. And it reasons to that by discussing a methodology. Well, it discusses how to determine whether a case is divisible or indivisible. And it speaks an absolute term. And it says only when state law requires. And in other places, it necessarily ‑‑ We could apply that analysis if we had some other statute, maybe an assault and battery statute. But where we have two cases, one has spoken on a burglary statute, well, we better follow Rendon. And another has spoken on a drug statute, we better follow Coronado. We have to follow. We can't say the reasoning in one would lead to a contrary result. For example, the reasoning in Rendon might well be, might well compel if the reasoning in Rendon is correct, an opposite result from the one we reached in Coronado. Coronado may be mistaken, and the reasoning in Rendon may compel the conclusion it's mistaken. Nevertheless, I don't see where that gets you, unless you have a third statute where we're deciding which to extend and which to limit. Because when you're deciding to apply something for a new statute, and this is a different statute, you're going to have to choose to what reasoning you're going to apply. If those two reasonings conflict, your choice is to either follow the line of cases that say, if a court didn't consider an issue, we're not bound by it. I think maybe I'll go with Rendon if it's a new statute, an assault and battery statute or something. Nice reasoning, but I don't see how I can in a materially similar statute to the Coronado one. Well, then I think if you think that those are in conflict, the resolution is to call sua sponte en banc. Because if you believe that the Rendon analysis leads to indivisibility, then the correct result is to go en banc. Let me ask you about jury consensus. Does the requirement of jury consensus always have to be found in the statute, or could it be found in state interpretive law? Rendon says it has to be found in state interpretive law, meaning how the statute is phrased, if it's disjunctively, isn't controlling. What's relevant is, does the state law require a finding of unanimity? That takes the analysis a little bit beyond a pure statutory question. Is our statute closer to Coronado or is our statute closer to Rendon? If the unanimity requirement has its origin not necessarily in the statutory language, but in the interpretation of the statute. Then it's more towards Rendon, because there's absolutely no cases in California that require jury unanimity. I see I have very little time. Can I reserve some time for rebuttal? Yes, we'll give you some rebuttal time. This is a very tricky question, and we've asked you a lot of questions. Good morning. May it please the Court. Benjamin Katz on behalf of the United States. The statute at issue here, to pick up where we left off, is nearly identical. Counsel, I'm curious. I think so far we've all agreed on that proposition. I'm curious. Is the jury told in cases under this statute? I know California has model jury instructions. Yes, Your Honor. Is it told you have to agree on the drug or you don't have to agree on the drug? It is told that you do have to agree on the drug. In California Jury Instructions 2302, which is cited on page 11 of our brief, there are five points in the jury instructions for this offense. The first one is the substance was a controlled substance. If it stopped there, obviously jury unanimity could be in doubt. Instruction number five, however, is the substance was, and then the jury instructions read, insert relevant substance here, something to that effect. So that would support the visibility theory of Coronado? Exactly, Your Honor. It requires that the specific substance be found by all of the jurors. This is not a case like a felony murder versus a premeditated murder, where there are multiple ways of getting at the same element of the offense there. It's the state of mind element here. And the evidence shows that this jury was polled? This was a guilty plea. Oh, I'm sorry. Yes, this one was. Yes. So the second point that I would say is Rendon notes that these jury instructions were considered in Coronado. In footnote 11 of that case, part of the reason that it says that it's not inconsistent with Coronado, that case, is because Coronado considered the jury instructions and considered the very similar arguments that were presented here. I have a question on another aspect of the case. You have conceded, or the government has conceded, that the district court committed plain error by not considering the modified categorical approach. And it's a little unclear to me whether Shepard-related or permissible documents exist, because ordinarily if we were to remand for resentencing, it's normally on an open record. But there's kind of no point if there aren't any documents. So what's the situation here? Your Honor, my understanding from the probation office is that those documents did exist for that case, as compared to a later similar drug trafficking conviction. This case was the relevant violation of 11-351 here was in 1989. There was a subsequent case where the probation court expressly said there are no judicially noticeable documents available for that conviction. Is there some explanation in the record for why the government's lawyer in this case didn't find and produce for the court the records that the court could consider for application of the modified categorical approach? No, Your Honor, there's nothing in the record on that, which is why we have, as Judge Graber noted, conceded that it needs to be remanded. If it needs to be remanded, it's on an open record so that the full inquiry can be made into that question. So you're representing that it would not be futile to do that? No, Your Honor. Or in your view, as some of the records that might? No, Your Honor, as opposed to cases cited by the appellant here, where cases are remanded on a closed record because the documents that were available were produced and no outcome would change if it were sent back based on those documents. Here. I know there's a possibility. We, of course, don't know because we don't have those materials. Correct. But it's at least in theory possible. It's in theory possible. So the two exceptions to the general rule regarding open record is if nothing would change the outcome or if a full inquiry was already made. Neither of those clearly apply here because it's possible that these documents would change the outcome and no full inquiry into the specifics of this conviction was made. The only issue there was the divisibility, which now, as we've discussed, Coronado has decided. I guess the reason why your adversary does not want sentencing to be wide open but only on the record you've got is that it seems like it's not right that a government lawyer should be too lazy to go and get the records needed and then if they win, fine, and if they lose, do the work they should have done the first time. That's correct, Your Honor. That's a point well taken. What I'd say is the nature of the record here in this case is all of the eggs are sort of put into this divisibility basket. In his sentencing papers, the defendant himself said he was selling heroin. So never at issue was what the substance was. It wasn't cat or any of these handful of substances that happened to be banned under California law and the schedules identified in 11351. There was no he was selling some particular controlled substance. It was he was selling heroin, and as a result, he suffered this 1989 conviction. So no full inquiry was done. It's a point well taken. The government should have introduced these shepherd documents, and as Your Honor noted, we've conceded that. But that's the reason for the error there. And, of course, the law has developed since then. At the time, it wasn't as clear as it is now that that was necessary when the substance was submitted to. Correct. Yeah, the law has developed. The law has developed. I mean, Coronado came out after this brief was filed. So the law here has developed significantly in multiple ways. Would we need to make the open record decision, or could we remain for the district court to decide? My reading of previous cases of this nature, in which cases are sent back for resentencing, is the court tends to specify whether it be on an open record or not. I think it was Matthews, the Ambon case, that set out the criteria that this court will use to make that determination. Correct. And it's that case, which is subsequently cited in a case very similar to this one, Espinosa-Martinez. Those two criteria, the ones I mentioned. Espinosa-Morales, or is there another one I'm missing? I have Espinosa-Martinez, but let me confirm, Your Honor. Well, there could be such a case. I didn't copy it from my book. It will find it. I'm certain it's not a problem. Thank you, Your Honor. So unless the court has any further questions, I'll submit on that. Thank you. Thank you. Mr. Branco, why don't you take two minutes for rebuttal? It's complicated. I'll first take up the question regarding the jury instructions. The jury instructions do not specifically say that you must put in a specific controlled substance and only one specific controlled substance. The actual language in the model instruction says, quote, unquote, insert type of controlled substance. The word type could mean, and if you look at the individual drug schedules, a type could be opiates, and then under that opiates, there's a long list, some of which are or are not. So this plain language of the jury. Were you saying among the opiates, there are some non-regulated drugs from the U.S. law point of view? I believe so, but I don't have that on the tip of my tongue. But what the California statutes are basically families of drugs within these. So each of these start with, okay, this is a family of, you know, say, opiates or depressants, et cetera. And so then they have the list below those. So this insert type could refer to that. Plus, there's nothing in this instruction that says you can't put multiple substances within that same instruction. And I've seen that in many of the cases, some of which are cited in the brief where the jury will be instructed, you must or the controlled substance was cocaine or cocaine-based. So it's not limiting it to one specific drug. I want to go to the scope of the remark. So the jury could write down two things on the blank? Well, the blank is actually. One could be on a federal list and one only on the state list? The blank is actually filled out by the judge in the party's pre-instruction. So that's the model instruction which someone writes in. So it would depend on what's at issue in that case, whether they put a general type, several specific types. It's just not clear from the plain language of the instruction. Getting back to the scope of the remand issue, there is evidence that, you know, first of all, the case is Espinoza-Morales. And that has an exception to the general rule when the facts are developed. And if you look at the probation report on page six, when it talks about this offense, it does mention that they had the complaint. And then at the sentencing, and this is Excerpt of Record, I believe it's 13, the probation officers, we have nothing further to add. So I submit that they had only one document. That's all they had at the time, and they shouldn't get a second bite at that. Well, usually the reason people only have one document and don't have the document they need is that it's a fair amount of trouble to get the document they need, and nobody bothered. Well, and there was an objection that, you know, that this was an overbroad statute, and the government nor the probation officer tried to do anything when they're asking for the modified categorical and correctional clause. But your client also admitted that it was heroin, right? My client admitted that he had a heroin problem, and it could have been referring to either one of the convictions. But factual admissions don't satisfy Taylor anyway. They don't. No, that's agreed. Thank you very much, counsel. The case just argued is submitted, and we will be continuing with a series of.
judges: Ebel, Kleinfeld, Graber